UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANTE PRICE, as next friend to T.P., <br> Plaintiff, <br> <br> v. <br> <br> DAVID E. BAILEY, JR., *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 13-490 (RWR/AK) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM ORDER**

Pending before the Court is Plaintiff's Motion to Compel Production of OPC Documents ("Motion") [17], Defendant District of Columbia's Opposition to the Motion ("Opposition") [21] and Plaintiff's Reply to the Opposition ("Reply") [22].  Plaintiff Chante Price ("Plaintiff" or "Price"), as next friend of T.P., moves to compel Defendants District of Columbia ( "Defendant" or "the District") and David E. Bailey ("Officer Bailey") (collectively "the Defendants") to produce all Office of Police Complaints ("OPC") documents relating to the April 19, 2012 incident that is the basis for the underlying litigation.[1]

**I. Background**

The Complaint alleges that on April 19, 2012, Defendant Bailey, an officer with the District of Columbia Metropolitan Police Department ("MPD"), assaulted ten year old T.P. while he was at his elementary school in Southeast D.C. (Complaint [1] ¶1.)[2]  On May 25, 2012, Price filed a complaint with the OPC, which referred the complaint to the United States Attorney's Office for the District of Columbia.  (Motion at 1.)  The United States Attorney's Office declined

---

[1] The Opposition was filed by Defendant District of Columbia.
[2] The action is brought under 42 U.S.C. §1983. (Complaint [1] ¶2.)

1

to bring criminal charges against Officer Bailey but the OPC is in the process of conducting an investigation.[3] (*Id.*)

On August 15, 2013, Plaintiff requested that Defendants produce all documents relating to the incident including "documents collected or generated as part of any internal MPD investigation, documents collected or generated as part of any investigation by the Office of Police Complaints, and all documents sent to or received from the United States Attorney's Office for the District of Columbia regarding the incident." (Motion, Exh. 1 [Plaintiff's First Request for Production of Documents, Request No. 1].) In a supplemental response to that request, the Defendants indicated that "[t]o the extent that the instant request seeks documents concerning an open investigation, the District objects and asserts the law enforcement privilege." (Motion, Exh. 3 [Defendants' Supplemental Responses to Plaintiff's First Request for Production of Documents and Interrogatories] at 5.) Defendants also provided Plaintiff with a privilege log noting approximately 60 pages of material described as "open OPC documents on Officer David E. Bailey, Jr." (Motion, Exh. 4 [privilege log].)

## II. Legal Standard

The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998) *aff'd*, *Tuite v. Henry*, 203 F.3d 53 (D.C. Cir. 1999) [hereinafter *Tuite II*]. "The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protect witnesses and law

---

[3] The Court held a telephonic status conference with the parties on March 31, 2014, at which time the District agreed to check whether the investigation was still ongoing. Defendant later confirmed that the investigation is still ongoing.

enforcement personnel, safeguard the privacy of individuals under investigation, and prevent interference with investigations." *Id.* at 177-78.

In order to succeed on a claim of privilege, the claimant first has the burden to establish its existence by properly presenting the privilege to a district court with appropriate "deliberation and precision." *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C. Cir. 1984). Once this threshold requirement is met, the District Court must then engage in a balancing test on the substantive merits of the privilege, weighing the public interest in nondisclosure against the need of a particular litigant for access to the privileged information. *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

### III. Analysis

#### A. Invoking the Privilege

To properly invoke a law enforcement privilege claim, a party must meet three requirements: 1) the claim of privilege must be made by the head of the department having control over the requested information; 2) assertion of the privilege must be based on personal consideration by the official; and 3) information for which the privilege is claimed must be specified, with an explanation of why it falls within the scope of the privilege. *In re Sealed Case*, 856 F.2d at 271 (citing *Black v. Sheraton Corp. of America,* 564 F.2d 531, 542-43 (D.C. Cir. 1977)); *see also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341-42 (D.C. Cir. 1984).

In the instant case, Defendant asserted the law enforcement privilege in its general objections to Plaintiff's discovery requests. (Motion, Exh. 2 [Defendants' Responses to

Plaintiff's Request for Production of Documents] at 2.)[4]  The District also claimed the law enforcement privilege in its October 31, 2013 supplemental responses.  (Opposition at 4.)[5]  In its Opposition, the District states that "upon a review of the open file, pertaining to plaintiff's complaint of Officer Bailey, Jr., the Deputy Director of OPC [has] asserted the privilege consistent with *Kay v. Picks* via an affidavit." (*Id.*)[6]  *See* Klossner Declaration ¶8 (indicating that disclosure "would reveal evaluative, factual, and administrative information about the content, directions, and status of OPC's investigation and such disclosures would . . . threaten [ ] the integrity of [the process].") *See also* Klossner Declaration  ¶9 (stating that the privilege is asserted "to prevent interference with the investigation and any potential future proceedings. . ., to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, and to safeguard the privacy of individuals other than the plaintiff involved in the investigations.")

      Plaintiff asserts that the Klossner Declaration includes "broad and conclusory statements about the harm that may result from disclosure of the OPC file, but does nothing to specifically delineate the documents in the OPC file to which he says the privilege applies and does not specify why those documents are properly subject to the law enforcement privilege." (Reply at 2-3). *See Friedman*, 738 F.2d at 1341-42 (refusing to uphold an assertion of privilege when the claimant makes a "generalized claim that the requested documents are protected by [the

---

[4] Plaintiff asserts that Defendants' responses to discovery requests were untimely and this failure to file a timely response may be deemed a waiver of any objections.  (Reply at 2); s*ee Fonville v. D.C.*, 230 F.R.D. 38, 42 (D.D.C. 2005) ("Based on defendant's failure to comply with the applicable discovery rules and the absence of any attempt to explain its non-compliance, it is consistent with a significant body of case law to deem all objections waived and to compel the desired discovery in its entirety.")

[5] Plaintiff contests the assertion of the law enforcement privilege by Defendant as opposed to the Director of OPC.  (Motion at 3-4.)

[6] Christian Klossner, Deputy Director for the OPC, has asserted the law enforcement privilege in a Declaration. ("Klossner Declaration"). (Opposition, Exh. 1.)

privilege].")[7]  While Mr. Klossner broadly characterizes the allegedly privileged information as "the contents contained in the investigative file," he does distinguish between this information and specific types of information that are not privileged and may be produced to Plaintiff (such as information provided in response to a FOIA request, medical forms provided by Plaintiff, medical records obtained through a release signed by Plaintiff, correspondence between OPC and the complainant regarding the status of the investigation and letters between OPC and the U.S. Attorney's Office or OPC and the parties to this action.  (Declaration ¶4.)[8]

The first and second prongs of the standard for invoking the law enforcement privilege have been met. Assuming *arguendo* that the third prong of the standard has also been met insofar as Mr. Klossner has distinguished between file documents that are privileged and those that are not, the public interest in nondisclosure must then be balanced against the need of a particular litigant for access to the privileged information.  See *In re Sealed Case*, 856 F.2d at 272.

### B. Applying a Balancing Test to Determine Applicability of the Privilege

In *In re Sealed Case*, 856 F.2d 268 (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973) and citing *Friedman*, 738 F.2d at 1342-43), the D.C. Circuit identified ten factors for the District Court to consider in determining the applicability of the law enforcement privilege:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonable likely to follow from the incident in question; (6)

---

[7] This requirement presents a challenge to the claimant of disclosing just enough information without disclosing that which they seek to protect.
[8] Plaintiff contends that as of the filing of the Reply, none of the documents that Klossner states may be disclosed have been disclosed.  (Reply at 3 n.2.)

5

whether the police investigation has been completed: (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information in sought to the plaintiff's case.

Courts have considerable leeway weighing these factors in the undertaking of the essential balancing process and the nature of the case presented may warrant consideration of additional factors. *In re Sealed Case*, 856 F.2d at 272. The court should view these factors with "an eye towards disclosure." *See Tuite*, 181 F.R.D. at 177.

As a preliminary matter, Plaintiff notes that there is a Protective Order [15] in place in this case that would "provide additional protection that would mitigate the potential harms claimed by Defendants" particularly with regard to the first two factors. (Reply at 8.) Plaintiff is also willing to agree to receive the OPC documents pursuant to an "Attorney's Eyes Only" designation for initial review, without prejudice to some later modification of the number of documents that need to remain in that category. (*Id.*) The ten balancing factors are analyzed below.

### 1. The extent that disclosure thwarts governmental processes

There is a public interest in minimizing disclosure of documents that would tend to reveal law enforcement investigative techniques or sources. *See, e.g., Black v. Sheraton Corp. of Am.*, 564 F.2d at 545. Plaintiff argues that producing the file of one of OPC's investigations during civil discovery will not adversely affect any other OPC investigations as this investigation is limited to alleged misconduct by Officer Bailey, whose behavior is challenged in a civil suit, and there is a Protective Order in place. (Motion at 7.) The District asserts that disclosure would have a chilling effect on witnesses and because the file is not closed here, additional witness interviews may be required before the investigation is completed. (Opposition at 5.) Defendant

further asserts that the Plaintiff will be able to ascertain what other witnesses have said and this may impact the statements of those other witnesses or plaintiff's own testimony. (*Id.*) In light of the limited scope of this investigation, coupled with the Protective Order and Plaintiff's agreement to receive the documents for "Attorney's Eyes Only," this factor weighs in favor of disclosure.

### 2. Impact on persons giving information

There is a strong interest in not disclosing confidential information when disclosure could result to harm to a witness in an investigation. *Tuite*, 181 F.R.D. at 179. Plaintiff argues that this case does not involve confidential informants or the threat of harm to witnesses who cooperate and furthermore, there is a Protective Order in place which will prevent the names of such individuals from being publicly disclosed. (Motion at 8.) The District asserts that because some of the witnesses are minors who are T.P.'s classmates, "revealing information to plaintiff, acquired from these student witnesses, could lead to a disruption in the classroom, violence, or any number of [un]known consequences." (Opposition at 6.) The Court finds that this factor weighs in favor of disclosure because this case does not involve confidential informants or other witnesses who may face retaliation; there is a Protective Order in place and Plaintiff is willing to abide by an "Attorney's Eyes Only" agreement.

### 3. Chilling governmental self-evaluation

Courts that have analyzed this factor have tied it to the factual material versus evaluative material factor [number 4 below], noting that "[b]ecause the data are purely factual, [there is] no impact whatsoever on the government's ability to engage in candid self-evaluation of the interview notes." *Waters v. U.S. Capitol Police Board*, 218 F.R.D. 323, 324 (D.D.C. 2003). Plaintiff contends that "turning over witness statements, notes of interviews, and other factual

material will not impact OPC's ability, or the MPD's ability, to later evaluate Officer Bailey's conduct and consider any need for changes in training or supervision." (Motion at 8.)[9] Plaintiff further notes that Defendant has provided other OPC files regarding Officer Bailey but Defendant distinguishes the other OPC files on grounds that those investigations were closed; all names were redacted from both files and one file contained no evaluative material. (Opposition at 7.)

Defendant argues that there is a "viable risk" that disclosure may chill governmental self-evaluation but this assertion is too speculative in connection with the production of factual data and in light of the Protective Order and proposed "Attorney's Eyes Only" agreement. *See Mueller v. Walker*, 124 F.R.D. 654, 655-56 (D. Or. 1989) (involving a Section 1983 claim against law enforcement officers and a request for internal investigation files containing evaluative material, where the court stated that any potential "chilling" may be avoided by issuing a protective order limiting the distribution of the documents). Accordingly, this factor weighs in favor of disclosure.

### 4. Whether information is factual or evaluative

When the information sought is objective factual data rather than a subjective evaluative summary, this factor weighs in favor of disclosure. *See, e.g. Waters v U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003). The reason behind withholding evaluative summaries is to prevent law enforcement investigation techniques, evaluative process, and what the investigators found to be significant from becoming publicly known. *Tuite*, 181 F.R.D. at 180. As a practical

---

[9] Because Defendant has not described the withheld material in any detail, Plaintiff speculates that the withheld material includes witness statements and notes of interviews. Plaintiff asserts that counsel has "twice offered in writing to narrow the request to only those documents and portions of documents that contain factual material, as opposed to evaluative material, however defense counsel never acknowledged that offer." (Motion at 3.)

matter, it is almost impossible to separate factual data within a report from evaluative matters. *See id.*(citation omitted). Given this difficulty, most courts weigh this factor in light of the relevant importance of the materials to plaintiff's case. (*Id.*)

Defendant asserts that the information sought is only "marginally" relevant to the claims at issue in this case and it "can be obtained through other means." (Opposition at 7-8.) Defendant fails to proffer any example of materials in the OPC file that do not relate to the claims at issue, particularly where the OPC investigation was triggered by the very events at issue in this litigation. Nor does Defendant explain the "other means" by which Plaintiff could obtain information relating to the investigation. The Court finds that the materials in the OPC file are relevant to the Plaintiff's claims and therefore, this factor weighs in favor of disclosure of factual material.

### 5. Whether the party seeking discovery is an actual or potential defendant in a pending or likely criminal proceeding

When the party seeking discovery is an actual or potential subject of any criminal proceeding following the incident in question, this factor weighs against disclosure. *See, e.g., Tuite*, 181 F.R.D. at 181. Plaintiff is the party seeking discovery and Plaintiff is not an actual or potential subject of any criminal proceeding. This factor weighs in favor of disclosure.

### 6. Whether the police investigation has been completed

This Court of Appeals for the D.C. Circuit has found that "if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired." *Black v. Sheraton Corp. of Am.*, 564 F.2d at 546 (quoting *Aspin v. Department of Defense*, 491 F.2d 24,

30 (D.C. Cir. 1973). "Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings." *Id.*

Plaintiff acknowledges that this factor may weigh in favor of non-disclosure. (Motion at 9.)[10] This factor weighs in favor of non-disclosure because the OPC investigation is still ongoing.

### 7. Whether any interdepartmental disciplinary proceedings have arisen or may arise

In cases where no interdepartmental disciplinary proceedings have arisen or are likely to arise out of the incident at issue, this factor weighs in favor of disclosure. *Tuite*, 181 F.R.D. at 181. Plaintiff asserts that while it is "impossible to predict whether or not disciplinary proceedings may arise from the OPC investigation[,] disclosure of the OPC file in this lawsuit will have no effect on OPC's independent evaluation of Officer Bailey's conduct." (Motion at 10.)

Defendant cites the OPC statute which states that in the event any allegation of the complaint has been sustained, the Police Chief shall cause the file to be reviewed within five working days after receipt of the file. The reviewing officers then have 15 working days to make a recommendation to the Police Chief regarding an appropriate penalty. (Opposition at 9 (citing 5 D.C. Code §1112)). Defendant asserts therefore that "potential discipline is a real possibility" and "[u]nder *Kay v. Pick* [711 A.2d 1251 (D.C. 1998)], the mere fact that there may be a future proceeding weighs in favor of non-disclosure." (Opposition at 9.)

This Court agrees with the Defendant that there is a real possibility of potential discipline; however, the disclosure of the OPC file to Plaintiff should not affect any evaluation of

---

[10] Plaintiff does however cite cases in which the court permitted disclosure of documents from ongoing investigations. (Motion at 9-10.)

Officer Bailey, particularly where there is a Protective Order in place and an agreement for "Attorney's Eyes Only."  The Court finds that this factor thus weighs equally in favor of non-disclosure and disclosure.

### 8. Whether the Plaintiff's suit is non-frivolous and brought in good faith

As a preliminary matter, Defendant did not address this factor in its Opposition.  There is accordingly no indication that this suit is frivolous or that it was brought in bad faith.  The Court notes that Defendant filed an Answer [7] in this case rather than moving to dismiss the Complaint [1] and the Court finds that this factor weighs in support of disclosure.

### 9. Whether the information is available through discovery or other sources

Defendant asserts that Plaintiff has the ability to depose any person believed to have useful information about the case and to obtain the factual summaries that the file may contain but Plaintiff has not taken any depositions as of the first five months of the litigation. (Opposition at 10.)  "Without having undertaken even the most minimal steps in the discovery phase of this case, it would be a mere conclusory assumption for plaintiffs to assert that additional discovery would be futile."  *Tutite*, 181 F.R.D. at 183.

Plaintiff contends however that the OPC file may contain statements from witnesses made soon after the incident in question, when memories were fresh, and further, a review of the witness statements will clarify whether such persons need to be further interviewed.  (Motion at 11.) In situations where individuals may be independently deposed by the party seeking information, courts have looked to various subjective factors to assess the effectiveness of such depositions, such as whether the individuals are "[l]ikely to be as forthcoming" with information and whether the witness' memories may have faded over time since the interview in question.  *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9.  *See also Frankenhauser*, 59 F.R.D. 339, 345

11

(E.D. Pa. 1973) (finding that "[t]he statement of a witness taken immediately after the [incident] is a catalyst of unique value in the development of the truth through the judicial process.  It should be available to both parties no matter which one obtained it. . . . ") The Court finds that this factor weighs in favor of disclosure of factual information, particularly witness statements which were taken closer in time to the incident and in the context of an OPC investigation.

### 10. Importance of information to Plaintiff's case

Disclosure is favored when information or reports concern the events directly leading to the filing of charges, or when information has "value for impeachment purposes." *Waters*, 218 F.R.D. at 324.  To the contrary, withheld information that is marginally relevant to the plaintiff's claim generally weighs against disclosure.  *See, e.g., A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 51 (D.D.C. 2013).  When the content or results of law enforcement interviews and investigatory reports is inconclusive, this also weighs against disclosure. *Tuite,* 181 F.R.D. at 184.

Defendant concedes that the information in the investigative file "may be important to plaintiff's case" but alleges that there are other sources available regarding the factual material sought. (Opposition at 10.)  Plaintiff reiterates that the file likely contains witness statements taken close in time to the incident, which provide more detail and which may also "have great impeachment value."  (Motion at 11); *see Waters*, 218 F.R.D. at 324 ("Thus, [the interview notes'] value to the plaintiff easily trumps all other pertinent considerations and compels their disclosure.")

The Court finds that this factor weighs in favor of disclosure because of the importance of information such as witness statements to the Plaintiff's case.

**Conclusion**

After weighing the ten aforementioned factors, the Court finds that the majority of the factors weigh in favor of disclosure, particularly with the added protections of the Protective Order and the Plaintiff's "Attorney's Eyes Only" proposal. Accordingly, the Court finds that factual material in the OPC investigative file does not warrant application of the law enforcement privilege and therefore should be disclosed to the Plaintiff, through counsel, within ten days.[11] In the event that the OPC file contains documents that mix factual and evaluative material, the evaluative material may be redacted and those redacted documents should also be produced to Plaintiff, through counsel, within ten days. With regard to the redacted information and any other [non-mixed] evaluative material that is withheld, that material should be produced to the Court, within ten business days.[12] The Court will conduct an *in camera* review to see if this evaluative material is protected by the law enforcement privilege or may be disclosed prior to the close of the OPC investigation.

Accordingly, it is this 29th day of April, 2014,

ORDERED that the Plaintiff's Motion to Compel Production of OPC Documents [17] is granted in part, denied in part and deferred in part.

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE

---

[11] Defendant should also provide Plaintiff with the materials noted in the Klossner Declaration, if these materials have not already been provided to Plaintiff.

[12] With regard to documents that are produced to Plaintiff in a redacted form, the redacted and non-redacted versions should be provided to the Court for its *in camera* review.